UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAVID WATLINGTON,** | : | |
| Plaintiff | : | No. 1:15-CV-02120 |
| vs. | : | (Judge Kane) |
| **J. REIGEL, et al.,** | : | |
| Defendants | : | |

**MEMORANDUM**

**Background**

On November 4, 2015, Plaintiff David Watlington, an inmate incarcerated at the Federal Correctional Institution at Schuylkill, Minersville, Pennsylvania ("FCI-Schuylkill"), filed a complaint pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1977).[1] (Doc. No. 1.) Along with his complaint, Watlington submitted a motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915. (Doc. No. 2.)

Watlington names as Defendants four employees at FCI-Schuylkill: (1) J. Reigel, an employee of the Education

---

1. 28 U.S.C. § 1331 states as follows: "The district court shall have original jurisdiction of all actions arising under the Constitution, laws, or treaties of the United States."
  Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

Department; (2) J. Mika, an employee of the Education Department; (3) Counselor Ginger;[2] and (4) Warden Perdue. (Doc. No. 1, at 1-2.)

The gist of Watlington's seven-page, typewritten complaint is his allegation of "racial gerrymandering." He alleges that on July 22, 2015 he was charged in an incident report with Bureau of Prisons' prohibited act 305, possessing legal materials of another inmate.[3] Watlington claims the materials were discovered during a search of his cell that was conducted when he was in the law library or education department. Watlington claims that the Defendants conspired to retaliate against him for engaging in legal work and assisting other inmates and that the complaint was motivated by racial bias. Watlington gives no details regarding the disposition of the incident report. Watlington also claims that he has been subjected to verbal abuse and harassment by Defendants for "the least minor fractions" (sic). Watlington alleges no facts to support personal involvement of Warden Perdue in these events.[4] Watlington does

---

2. The court assumes that "Ginger" is the Defendant's given name and not her surname.

3. Prohibited Act 305 is a Moderate Severity Level Prohibited Act which states as follows: "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels." 28 U.S.C. § 541.3 (Table 1).

4. Although naming Warden Perdue in the caption of the complaint, Watlington in the body of the complaint merely states that "Warden Perdue is the warehouseman for inmates at FCI Schuylkill and is not a party to civil complaint." (Doc. No. 1,
(continued...)

not allege that the Defendants retaliated against him for filing civil complaints or grievances relating to prison conditions.

As relief, Watlington requests (1) the issuance of a declaratory judgment against all of the Defendants finding that they conspired against him; (2) the issuance of an injunction against Defendants, including that Defendants Mika and Ginger "stay 10 feet from" him; and (3) compensatory and punitive damages totaling $280,000.00.

The Prison Litigation Reform Act (the "PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996) permits prisoners to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., but requires payment of the full filing fee in non-habeas cases and requires the court to screen prisoner complaints.[5]

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319,

---

4. (...continued)
at 1.)

5. Section 1915(e)(2) provides:

   (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989).  Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit . . . ."  Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).  The Supreme Court has recognized that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible . . . ."  Denton v. Hernandez, 504 U.S. 25, 33 (1992); see also Roman, 904 F.2d at 194 (baseless factual contentions describe scenarios clearly removed from reality).  The Third Circuit added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial."  Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995).

    A complaint may also be dismissed under the screening provision of the PLRA if it fails to state a claim upon which relief may be granted.  Fed.R.Civ.P. 12(b)(6).  Under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips

v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)).  While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal,___U.S.___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court  "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the issue of whether a complaint states a viable claim, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11.  Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

For the reasons outlined below, Watlington's motion to proceed in forma pampers will be construed as a motion to proceed

without full prepayment of the filing fee and granted, and the complaint will be dismissed.

**Discussion**

To state a claim under Bivens, Plaintiff must satisfy three requirements; he must: (1) assert that a constitutionally protected right has been violated; (2) state a cause of action sufficient to invoke the general federal question jurisdiction of the district court; and (3) demonstrate why money damages are the appropriate form of relief. See Muhammad v. Carlson, 739 F.2d 122, 123-4 (3d Cir. 1984).

A defendant's conduct must have a close causal connection to a plaintiff's injury in order for liability under Bivens to attach. See Martinez v. California, 444 U.S. 277, 285 (1980). A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. See Monell v. Department of Social Serv. of the City of N.Y., 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

A plaintiff must allege that each named defendant was personally involved in the events or occurrences that underlie the claim. See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003), (citations omitted). Liability may not be imposed under Section 1983 on the principle of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v.

Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Rather, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." Id. at 106 n.7.

There are no allegations in Plaintiff's complaint from which it can be concluded that the Warden was involved in any incidents which violated Watlington's civil rights. There is no basis to conclude that he knew of, participated in or acquiesced in any unlawful conduct. Consequently, the claims against the Warden will be dismissed.

Plaintiff's conspiracy claim against the other Defendants is also defective. In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992) cert. denied, 506 U.S. 1079 (1993). Rather the complaint "must . . . contain supportive factual allegations." Rose, 871 F.2d at 366. Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. Consequently, a plaintiff must allege

7

with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F2d 1396, 1405 n.16 (3d Cir. 1991).

Viewing the complaint in the light most favorable to Watlington, it is clear that Watlington has failed to state a viable conspiracy claim against Defendants. There are no averments of fact in the complaint that reasonably suggest the presence of an agreement or concerted activity between Defendants to violate Watlington's civil rights. Watlington's vague and conclusory allegations of a conspiracy fail to satisfying the pleading requirements of Twombly and Iqbal.

Watlington's equal protection claim also fails. In order to establish a viable equal protection violation must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert denied, 475 U.S. 1096 (1986); E & T Realty v.

Strickland, 830 F.2d 1107, 1113-14 (11th Cir. 1987), cert. denied, 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors. See, e.g., Britton v. City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), aff'd, 972 F2d 1330 (3d Cir. 1992).[6]

    Watlington has failed to allege facts relating to the incident report filed on July 22, 2015, from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of his race or some other

---

6. However, when a statute, rule or regulation "discriminates on its face," there is no need to present any further evidence of intent. See E & T Realty, 830 F.2d at 1112 n.5.

impermissible reason.[7]  Consequently, his equal protection claim will be dismissed.

Watlington's complaint also fails to adequately plead a retaliation claim under the First Amendment.  There are two avenues to raise such a claim: (1) a retaliation claim based on Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) and (2) a retaliation claim based on Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002).  Both types of claims require that the prisoner demonstrate that the conduct which led to the alleged retaliation was constitutionally protected.

Under Rauser, to establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. 241 F.3d at 333. Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." Id. (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  This requirement

---

7.  Watlington does state in a section of the complaint entitled "Investigative Reports" that Defendant Reigel "acknowledge (sic) to plaintiff that she had not written up any Whites or Mexicans only African American since she work (sic) for BOP."  Watlington, however, does not allege that Defendant Reigel made any admissions that she conspired and retaliated against Watlington because he was an African American.  Also, Waltlington in the same section stated that Defendant Mika apparently when questioned stated that "he was bias (sic) toward African Americans because he thinks that they are all savages[.]" Again, however, there is no connection to the incident of July 22, 2015, or admissions by Mika that he conspired and retaliated against Watlington because of his race, religion, national origin or on some other impermissible basis.

is satisfied upon showing that "the action 'was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" <u>Id</u>. (quoting <u>Allah</u>, 229 F.3d at 225). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him" or take the adverse action. <u>Id</u>. (quoting <u>Mount Healthy Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977).

      The test under <u>Smith v. Mensinger</u> is essentially the same. Filing a false misconduct report is cognizable as a denial of due process when the false misconduct charge is filed "for the sole purpose of retaliating against an inmate for his/her exercise of a <u>constitutional right</u>" such as his or her right to file a grievance with state officials or a lawsuit regarding prison conditions. 293 F.3d at 653-654 (emphasis added).

      Watlington alleges no facts from which it can be concluded that the July 22, 2015 incident report was in retaliation for complaints or grievances regarding prison conditions. Watlington instead appears to allege that he was retaliated against for assisting other inmates with legal matters. Consequently, Watlington must first establish that he has a personal, constitutional right to assist other inmates.

      The United States Court of Appeals for the Ninth Circuit in <u>Shaw v. Murphy</u>, 195 F.3d 1121 (9th Cir. 1999) in finding a

11

cognizable claim of retaliation noted that it previously held that "inmates have a First Amendment right to assist other inmates with their legal claims." Id. at 1124 (citing Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985)). The Shaw case involved the validity of a prison regulation relating to communication between inmates which is not an issue involved in the present case.  The Supreme Court reversed the Ninth Circuit and in so doing stated as follows:

> Under our decision in Turner v. Safley, . . . restrictions on prisoners' communications to other inmates are constitutional if the restrictions are "reasonably related to a legitimate penological interest." . . . In this case, we are asked to decide whether prisoners possess a First Amendment right to provide legal assistance that enhances the protections otherwise available under Turner.  We hold that they do not.

Shaw v. Murphy, 532 U.S. 223, 225 (2001). The Supreme Court in its decision referred to three other Court of Appeals' cases which conflicted with the Ninth Circuit's conclusion and noted that as a reason for granting certiorari. Id. at 227-228.  Those three cases were Gibbs v. Hopkins, 10 F.3d 373, 378 (6th Cir. 1993)(no constitutional right to assist other inmates with legal claims), Smith v. Maschner, 899 F.940, 950 (10th Cir. 1990)(same) and Gassler v. Rayl, 862 F.2d 706, 707-708 (8th Cir. 1988)(same).

The Supreme Court stated that the Ninth Circuit "applied [its] decision in Turner, but it did so only against the backdrop

of this First Amendment right, which, the court held, affected the balance of the prisoner's interests against the government's interests. Concluding that the balance tipped in favor of Murphy, the Court of Appeals upheld Murphy's First Amendment claim." 532 U.S. at 227.  In the concluding portion of the decision the Supreme Court further noted that "[a]ugmenting First Amendment protection for inmate legal advice would undermine prison officials' ability to address the 'complex and intractable' problems of prison administration," and "we granted certiorari only to decide whether inmates possess a special First Amendment right to provide legal assistance to fellow inmates." Id. at 231-232. Consequently, the Turner balancing analysis of the Ninth Circuit was defective because it assumed that an inmate had a First Amendment right to assist other inmates and the Supreme Court remanded for a proper Turner analysis of the prison regulation without the assumption that the inmate had a First Amendment right to assist other inmates with legal matters.

After the Supreme Court's Shaw decision, several courts in this circuit have found that "an inmate does not possess an independent First Amendment right to provide legal assistance to fellow inmate." See, e.g. Wisniewski v. Fisher, No. 13-2642, 2014 WL 4918931, at *19 (M.D. Pa. Sept. 29, 2014).  In fact, in Cooper v. Pennsylvania Department of Corrections, this Court similarly

13

found that a plaintiff inmate failed to "establish[] that he had a constitutional right to assist other inmates" with drafting a prison grievance.  Cooper v. Pennsylvania Dep't of Corr., No. 12-01186, 2016 WL 1271327, at **1, 5 (M.D. Pa. Mar. 31, 2016).  Thus, in light of the Shaw decision and jurisprudence from this circuit, the Court finds that Watlington has failed to state a cognizable First Amendment retaliation claim.  Consequently, Plaintiff's First Amendment claim will be dismissed.

Finally, claims of harassment which do not go beyond mere words are not actionable under Bivens. See Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Although the complaint fails to state a cause of action against the named Defendants.  Watlington will be granted an opportunity to amend.  Watlington is advised that the amended complaint must be complete in all respects.  It must be a new pleading which stands by itself without reference to the complaint already filed.  Such amended complaint should set forth his claims

in short, concise and plain statements. It should specify which actions are alleged as to which defendants. If Watlington fails to file an amended complaint adhering to the standards set forth above, this case will be closed.

      An appropriate order will be entered.